USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/25/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :

M.W., *on behalf of herself and her child*, A.W.,
and A.W. *on behalf on herself*,                :

              Plaintiffs,          :              15cv5029

        -against-                :

NEW YORK CITY DEPARTMENT OF        :       MEMORANDUM & ORDER
EDUCATION, *et al.*,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff M.W. and her child A.W. move to preliminarily enjoin the New York City Department of Education, the New York City Board of Education, and Chancellor Carmen Farina (collectively "Defendants"), from terminating A.W.'s eligibility to receive educational services under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, et seq. and New York State Education Law §§ 3202. For the reasons that follow, M.W.'s application is granted.

## BACKGROUND

        The material facts are not in dispute. They reveal a Dickensian saga of bureaucratic neglect over more than a decade. Defendants failed abjectly to provide a free and appropriate public education ("FAPE") to A.W. This case is unlike any other.

        A.W. is 21 years old and suffers from a speech-language, as well as an auditory and language processing disorder. She lives with her mother M.W., who herself cannot read and has been diagnosed as "mildly intellectually disabled." In December 2004, Defendants

misclassified A.W. as "severely cognitively impaired." As a consequence of that error, A.W. was placed in a non-credit bearing program at a school for children with severe developmental disabilities. Such a program offered neither access to a general curriculum nor preparation for a high school (or equivalency) diploma.[1] Defendants did not discover their erroneous diagnosis and misclassification of A.W. for nearly a decade because they never reevaluated her. Thus, A.W. languished for nine of her most formative years, making virtually no academic progress.

In 2013, when Defendants finally realized their error, A.W. was 19 years old. At that time, the District placed her in a "diploma track" program at a public school—the Holcombe L. Rucker School of Community Research ("Rucker")—and removed the designation of severely cognitively impaired. And so, at the time when A.W. should have completed her diploma requirements, she only started earning credits.

However, another administrative error held her back once again. Students need to earn 44 academic credits and pass five Regents exams to earn a high school diploma. Students with disabilities who entered ninth grade prior to the 2011-2012 school year were eligible for a "Safety Net" program allowing them to take Regents Competency Tests ("RCTs") that were less rigorous than Regents exams. The State Education Department determined to discontinue RCTs for students entering ninth grade beginning in the 2012-2013 school year. When A.W. entered Rucker, Plaintiffs allege she was technically eligible to take RCTs. However, because she was erroneously designated as a tenth grader in Rucker's computer system, she was deemed ineligible. As a result, A.W. never prepared for or took any RCTs.

---

[1] In 2009, when A.W. turned 15, she was placed in a "GED" class at this school but it was later discovered at the impartial hearing that this class was incorrectly named and was not actually designed to prepare students for a high school equivalency diploma.

In February 2014, Defendants tried again to designate A.W. as "severely cognitively impaired" and put her back on a non-diploma track. Plaintiffs allege this was done out of concern that A.W. would not graduate before reaching her 21st birthday. As such, Defendants crafted an individualized education program ("IEP")[2] in March 2014 putting A.W. back in a non-diploma track school for children with severe behavioral disorders. That school was designated by the State as being one of the "most persistently dangerous" schools in the State. A.W. did not want to transfer to that school, and A.W.'s present counsel took up her cause. Defendants abandoned the March 2014 IEP and reinstated the November 2013 IEP for the 2013-14 school year.

In February 2015, Defendants changed A.W.'s program without a reevaluation or IEP meeting. A.W. was moved from full-time, academic classes (as per the 2013 IEP) to a half-day vocational program for medical billing and office administration called "Co-op Tech." She remained in some academic classes in the afternoon, obtaining part-time credits. This arrangement was implemented so that if the District transferred A.W. to a vocational program, she would still be allowed to get elective credits.

Plaintiffs pursued an administrative impartial due process hearing in October 2014, seeking compensatory education and additional credit-bearing instruction that would extend beyond the school year she turned 21. At the impartial hearing, the District admitted that it had denied A.W. a free appropriate public education for 11 years, including while at Rucker. It interposed no defenses, offered no witnesses, and explicitly waived any statute of limitations

---

[2] The IDEA requires that "[a]t the beginning of each school year, each local educational agency, State educational agency, or other State agency ... shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program." 20 U.S.C. § 1414(d)(2)(A).

3

defense. Nevertheless, on March 25, 2015, the impartial hearing officer ("IHO"), found no "gross violation" occurred to warrant compensatory education for A.W. beyond age 21, and denied Plaintiffs virtually all of the relief they sought.[3] Instead, the IHO ordered that the student remain at Rucker until the end of the 2014-2015 school year and receive compensatory services during that time period. Plaintiffs appealed to the New York State Review Officer ("SRO") of the New York State Education Department. On June 26, 2015, the SRO held that the IHO erred in several respects, and modified the IHO's award to provide A.W. certain compensatory services beyond age 21. But anticipating that A.W. would "age out," the SRO declined to extend her eligibility or award instruction that would prepare A.W. for a high school diploma.

In June 2015, A.W. turned 21 and "aged out" of her eligibility for public education in New York and under the IDEA as of June 30, 2015. Plaintiffs filed this action on June 26, 2015, before learning of the SRO's decision. Following the receipt of the SRO's decision, Plaintiffs filed an Amended Complaint and the present motion for injunctive relief. A.W. seeks to extend her eligibility to receive educational services under IDEA and the NY State Education Law now that she has turned 21.

Remarkably, even though Defendants admit they denied A.W. a FAPE during her two years at Rucker, she nevertheless earned 26.6 of the 44 credits a student needs to graduate. At the present time, pursuant to the SRO's decision, A.W. receives speech and language therapy services twice a week, as well as daily non-credit bearing tutoring services through the Huntington Learning Center. Moreover, pursuant to the Court's Order, see ECF No. 25, Defendants set up a program of 1-to-1 home instruction (non-credit bearing) in Math and English

---

[3] These proceedings are summarized in ¶¶ 225-58 of the Amended Complaint.

4

for the pendency of this motion in preparation for the RCTs. Earlier this month, A.W. passed the Math and Writing RCTs.

## DISCUSSION

I.  Legal Standard

Generally, a party seeking a preliminary injunction must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Monserrate v. N.Y. State Senate, 599 F.3d 148, 154 (2d Cir. 2010) (citation omitted).

The Second Circuit holds movants to a heightened standard where: (i) an injunction is "mandatory," or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33–34 (2d Cir. 1995)). When either condition is met, the movant must show a "clear" or "substantial" likelihood of success on the merits, Beal v. Stern, 184 F.3d 117, 123 (2d Cir. 1999), and make a "strong showing" of irreparable harm, Doe v. N.Y. Univ., 666 F.2d 761, 773 (2d Cir. 1981), in addition to showing that the preliminary injunction is in the public interest. Actavis, 787 F.3d at 650.

Here, M.W. fashions her application as one to maintain the status quo because she seeks to "extend" eligibility. But the relief sought is more appropriately framed as an award of temporary, prospective equitable relief in the form of "compensatory education." And that amounts to a mandatory injunction which alters the status quo. See Sabatini v. Corning-Painted

5

Post Area Sch. Dist., 78 F. Supp. 2d 138, 142-43 (W.D.N.Y. 1999) (applying mandatory injunction standard where "plaintiffs do seek to alter the status quo by moving Aaron from his current, home-tutoring situation into the residential placement at Mitchell"); see also Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 392 n.20 (N.D.N.Y. 2001) (noting if parents lost compensatory education hearing before the IHO and sought a preliminary injunction imposing such education during the appeal process, that "would clearly require a mandatory injunction test"). Accordingly, M.W. must show a "clear" or "substantial" likelihood of success on the merits, and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest.

II.     Substantial Likelihood of Success

As of June 2015, the end of the school year in which she reached the age of 21, A.W. was no longer eligible for Defendants to fund her education. See Somoza v. New York City Dep't of Educ., 538 F.3d 106, 113 (2d Cir. 2008). However, compensatory education is available to students over the age of 21 where there have been "gross procedural violations." See Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 456 n.15 (2d Cir. 2015) (citing Garro v. State of Conn., 23 F.3d 734, 737 (2d Cir. 1994)). Here, the SRO correctly determined the District had committed a gross procedural violation, but failed to fashion an appropriate remedy.

"Compensatory education is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." E. Lyme Bd. of Educ., 790 F.3d at 456 (quoting Somoza, 538 F.3d at 109). The Second Circuit has endorsed compensatory education as a remedy for substantive FAPE claims. See P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Ed., 546 F.3d 111,

123 (2d Cir. 2008). And it leaves "the mechanics of structuring the compensatory education award to the district court's sound equitable discretion . . . ." Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist., 408 Fed. App'x 411, 415 (2d Cir. 2010) (summary order); see also E. Lyme Bd. of Educ., 790 F.3d at 457 (leaving to district court's discretion whether "compensatory education should be limited to the kinds of services specified in the amended 2008–2009 IEP, or encompass analogous educational services appropriate to the Student's current needs").

Recently, the Second Circuit cited the following standard with approval: "[T]he ultimate award [of compensatory education] must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Reid ex rel. Reid v. D.C., 401 F.3d 516, 524 (D.C. Cir. 2005), cited in E. Lyme Bd. of Educ., 790 F.3d at 457. And the Second Circuit concluded, "Whatever its precise form, the remedy must be 'appropriate in light of the purpose of the Act.'" E. Lyme Bd. of Educ., 790 F.3d at 457 (quoting Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985)); see also Burr by Burr v. Ambach, 863 F.2d 1071, 1078 (2d Cir. 1988) ("If, in this case, we do not allow an award of compensatory education, then [the student's] right to an education between the ages of three and twenty-one is illusory.").

Here, Defendants concede they failed to provide A.W. with a FAPE for eleven years. This was not a deviation from an IEP, it was a catastrophic oversight: by the Defendants' own erroneous designation of A.W. and subsequent neglect, she was inappropriately warehoused in a program for severely cognitively impaired children for nine years. As such, the SRO

7

appropriately determined that Defendants committed a "gross" procedural violation and that compensatory education beyond age 21 was warranted. But the SRO declined to award credit-bearing instruction and instead ordered Defendants to provide A.W. with 1931 hours of 1:1 tutoring instruction, 300 hours of speech and language therapy, and 50 hours of social work services, over the next four years. The SRO also ordered the Department of Education to fund up to $2,000 for the cost of a preparation course for the Test Assessing Secondary Completion ("TASC"), a high school equivalency program. Plaintiffs argue this is not sufficient to remedy the deprivations A.W. suffered. This Court agrees.

In denying A.W. an award that would allow her to remain on a diploma track, the SRO reasoned that A.W. was "not eligible" for continued credit-bearing instruction and found there was no evidence in the record that an extension of eligibility was "necessary."[4] See SRO Decision at 14 ("[T]he hearing record does not indicate that it is necessary to grant an extension of the student's period of eligibility to remedy the violations of the IDEA."). But the question is not whether A.W. is eligible for a FAPE. It is whether—Defendants having denied A.W. a FAPE while she was still entitled to it under the IDEA—it is "appropriate" as equitable relief for A.W. to be awarded compensatory education that would put her in the same position she would have been had she not been denied a FAPE. See, e.g., Ferren C. v. Sch. Dist. of Philadelphia, 595 F. Supp. 2d 566, 577 (E.D. Pa. 2009), aff'd, 612 F.3d 712 (3d Cir. 2010). By failing to extend her eligibility for Regents exams or award any credit-bearing instruction, the SRO effectively ensured that A.W. would never be able to obtain a high school diploma. In the

---

[4] The SRO also declined to provide A.W. with a compensatory education fund with which A.W. could purchase services at her own discretion. But the SRO does not justify this decision beyond the bare conclusion that it would not "constitute a remedy equitably fashioned to 'make up' for the harm caused by the district's admitted failure to provide the student with a FAPE over the course of multiple years." SRO Decision at 14.

extraordinary circumstances of this case, the fundamental purpose of the IDEA and compensatory education cannot be achieved without affording A.W. a chance to earn a diploma. And the SRO failed to justify her decision to the contrary. Cf. Reid, 401 F.3d at 521 (holding district court owed little deference to hearing officer's determination of compensatory education award where the officer's "order contains neither reasoning to support this hour-per-day formula nor factual findings showing that the 810–hour result satisfied Mathew's needs"). Accordingly, A.W. has established a substantial likelihood of success on the merits of her IDEA claim.

### III. Strong Showing of Irreparable Harm

A.W. makes a manifest showing of irreparable harm. A further interruption in her diploma track education would cause her to regress academically, and also risk losing the best chance she has at a high school diploma because the RCT tests may be phased out.

A.W. has made a strong showing that an interruption in credit bearing instruction will cause her to regress. See Cosgrove, 175 F. Supp. 2d at 393 ("[B]ecause education is an on-going continuum which, when broken through interruption, can cause significant set backs, delay in implementing the remedy could make the compensatory education award merely a pyrrhic victory for Brendan"). She has already been deprived of such instruction over the summer because she aged out. In nearly every IEP Defendants crafted for A.W., they determined she was eligible for extended school year services, which would permit her to continue her general and special educational services over the summer months. This is reserved for students, like A.W., who will "substantially regress[]" with breaks in instruction. (Am. Compl. ¶ 140.) It is astonishing that the Defendants now claim that interrupting A.W.'s credit bearing instruction would not cause irreparable harm.

9

And there are other circumstances that compel swift action. Next year, New York State plans to phase out the availability of a safety-net program for disabled students which permits them to obtain a diploma with less rigorous Regents Competency Tests ("RCTs"). Although Defendants now represent that they have received an "indicat[ion]" from the State Education Department that "the RCT exams will be available to eligible students through August 2018," Lively Decl. ¶ 6, this contradicts their earlier representation that the RCTs would only be available for one more year, see July 7, 2015 Tr. 8-9. This Court declines to wager on that uncertainty.

Against all odds, A.W. has demonstrated an extraordinary ability to learn and progress in a short period of time when given the chance. In just two years, she earned 26.6 of the 44 credits needed to graduate. While this motion has been pending, Defendants provided A.W. with 1-to-1 tutoring to prepare her for the RCTs. Earlier this month, she passed two of those exams. For the first time in her life, A.W. is developing a habit of success that she was never permitted to cultivate because of Defendants' gross procedural violations. To interfere with her progress while lawyers spar over administrative proceedings in which Defendants have conceded liability, would be absurd. Accordingly, M.W. has made a strong showing of irreparable harm.

VI.  Public Interest

"Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." Time Warner Cable of New York City v. Bloomberg L.P., 118 F.3d 917, 929

(2d Cir. 1997) (collecting cases). Defendants have a valid interest in wanting to enforce an age limit in the public school system. But where a student ages out because of Defendants' long term neglect, the public interest is best served by holding Defendants accountable beyond age 21. Otherwise, Defendants have an incentive to run out the clock. And of course, Defendants could have avoided this outcome by complying with their duties under the IDEA and New York Education Law.

VII.   Relief Sought

Having determined that a preliminary injunction is warranted, this Court must fashion an appropriate remedy. Ordinarily, it would make sense to use the "stay-put" provision as a guide to craft a suitable remedy.[5] But there are compelling reasons why a different remedy is appropriate. First, A.W. never had a suitable placement in her entire public school career. And her most recent placement appears to have been arranged in anticipation of A.W. aging out. Thus, it was not tailored to provide her with the services she would have received were she not turning 21. Accordingly, a return to the "status quo" would not fulfill the purpose of compensatory education.

Following the issuance of the SRO's decision, this Court heard the preliminary injunction motion on an expedited schedule. Following oral argument, on August 4, 2015, this Court informed the parties that it would grant Plaintiffs' preliminary injunctive relief but

---

[5] The IDEA's "pendency" or "stay-put" provision provides that, where the parents and school district disagree, the student shall remain in the then-current educational placement of the child during the pendency of any administrative proceedings. See 20 U.S.C. § 1415(j); N.Y. Educ. Law §§ 4404(4), 4410(7)(c); 34 C.F.R. § 300.518(a); 8 N.Y.C.R.R. § 200.5(m). To determine a child's "then-current educational placement," a court typically looks to: (1) "the placement described in the child's most recently implemented IEP"; (2) "the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked"; or (3) "the placement at the time of the previously implemented IEP." E. Lyme Bd. of Educ., 790 F.3d at 452 (quoting Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004)).

11

encouraged the parties to work out an appropriate placement for A.W. At that conference, the parties agreed A.W. would continue to receive services from Huntington Learning Center but the stumbling block appears to be where to place A.W. for credit bearing instruction. The two options discussed were Rucker or 1-to-1 home instruction.

This Court fixed August 14 as the deadline for the parties to reach an agreement or have the Court impose one. In setting that deadline, this Court was mindful that it would be difficult to place A.W. in any school for the upcoming school year, let alone one that would be appropriate for her needs. On August 14, Defendants sought an extension to August 18. This Court granted that extension and Defendants submitted their proposed order. Plaintiffs' counsel requested a day to submit a counterproposal. At 7:00 p.m. on August 19, Plaintiffs' counterproposal came across the transom, revealing that the parties were far apart in their efforts to resolve the motion.

Defendants propose that A.W. return to Rucker, where she would enjoy a "supportive environment in which she can work towards her stated goal of earning a high school diploma." (Letter from Corporation Counsel dated August 18, 2015, at 2, ECF No. 41.) But that proposal overlooks the New York City Department of Education's (NYCDOE) notification to all Rucker students that they could transfer to a different school for the 2015-2016 school year because Rucker was not meeting its accountability standards.[6] (ECF No. 44-2.) Specifically, in a letter dated April 2015, NYCDOE advised parents that the State Education Department determined Rucker was "among the lowest performing statewide in terms of overall

---

[6] Plaintiffs' counsel was unaware of the letter containing this notification until it came up in the parties' settlement discussions following oral argument on this motion. Plaintiffs' counsel provided the court with a copy of that notification in her most recent submission. (See ECF No. 44-2.)

12

performance, graduation rate, and/or other criteria." (ECF No. 44-3.) Defendants' contention that Rucker is a suitable placement is belied by its own actions in prioritizing transfers of the lowest performing students out of Rucker. (See ECF No. 44-3 (offers to transfer depend on seat availability and priority given to lowest-performing and lowest income students).)

Defendants explain that they have been unable to find another school that would be appropriate for the fall semester. (Corp. Counsel Letter, at 2.) Plaintiffs oppose placement at Rucker and urge this Court to order 1-to-1 credit-bearing instruction. Defendants make no mention of considering this option, which was raised as a possibility during a prior conference. This litigation has been pending for two months. Plaintiffs' request for an extension of eligibility was initiated in administrative proceedings nearly a year ago. Time is of the essence. A.W. should not have to bear the burden of Defendants' failure to prepare a contingency plan. While this case is pending, efforts should be made to address this grievous situation. Accordingly, this Court grants A.W.'s application for preliminary injunctive relief and directs Defendants to provide her with 1:1 credit-bearing instruction, in addition to the tutoring, speech and language therapy, and social work services ordered by the SRO. Defendants shall permit A.W. to apply to a NYCDOE Transfer School for the spring 2016 semester and to attend, in lieu of 1:1 instruction, if accepted.

## CONCLUSION

M.W. has made a clear and substantial showing of a likelihood of success on the merits and a strong showing of irreparable harm. A preliminary injunction is in the public interest. Accordingly, this Court grants the following preliminary injunctive relief during the pendency of this action:

13

1. A.W. will continue to be eligible for special education services, high school credit-bearing general education instruction and to earn a high school diploma by the New York City Department of Education pursuant to the Individuals with Disabilities in Education Improvement Act, 20 U.S.C. §§ 1400 et seq., and N.Y. State Educ. Law §§ 3203(1), 4401(1);

2. Defendants shall provide A.W. with 1:1 instruction in five credit-bearing classes per semester in subjects that A.W. would require for the purposes of fulfilling her regular diploma requirements pursuant to 8 N.Y.C.R.R. § 100, et seq., as well as preparation for the Regents Exams or the Regents Competency Tests ("RCTs"); and,

3. Defendants shall permit A.W. to sit for the Regents exams and RCTs during the 2015-2016 school year and summer of 2016.

In addition, Defendants shall permit A.W. to apply to a New York City Department of Education Transfer School for the spring 2016 semester and to attend, in lieu of 1:1 instruction, if accepted.

The Clerk of the Court is directed to terminate the motion pending at ECF No. 16.

Dated: August 25, 2015
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Elisa F. Hyman
Friedman & Moses LLP
233 Broadway, Suite 901
New York, NY 10279
*Counsel for Plaintiffs*

Lauren Almquist Lively
Andrew James Rauchberg
New York City Law Department
100 Church Street, Room 4-114
New York, NY 10007
*Counsel for Defendants*